**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**OLIVER SALMON,**

                                        **Plaintiff,**

          **vs.**                                              **1:13-cv-1037**
                                                               **(MAD/RFT)**

**THOMAS BLESSER; CITY OF ALBANY**
**POLICE DEPARTMENT; THE CITY OF ALBANY;**
**JOHN DOE1; and JOHN DOE2,**

                                        **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**OFFICE OF KEITH F. SCHOCKMEL**          **KEITH F. SCHOCKMEL, ESQ.**
4 Atrium Drive
Suite 290
Albany, New York 12205
Attorney for Plaintiff

**CITY OF ALBANY**                        **ERIC P. SUGAR, ESQ.**
**CORPORATION COUNSEL**                   **JOHN JOSEPH REILLY, ESQ.**
City Hall
24 Eagle Street
Albany, New York 12207
Attorneys for Defendants


**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 23, 2013, Plaintiff filed a complaint against Defendants Thomas Blesser, the

City of Albany Police Department, the City of Albany, "John Doe1," and "John Doe2."  *See* Dkt.

No. 1.  Plaintiff alleges that Defendants' actions violated his constitutional rights under the First,

Fourth, and Fourteenth Amendments of the United States Constitution.  *See* Dkt. No. 1 ¶¶ 46-49,

52-53.  Plaintiff also alleges that Defendants' actions give rise to a claim for intentional infliction

of emotional distress. *See id.* ¶¶ 50-51. Presently before the Court are Defendants' motions to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 6, 22.[1]

## II. BACKGROUND[2]

In the complaint, Plaintiff alleges that on September 1, 2010, he was at the Albany City Courthouse with his attorney in order to examine a file in the Clerk's office. Dkt. 1 ¶ 11. Because only attorneys were permitted to enter the Clerk's office, Plaintiff was instructed to wait for his attorney in a public area of the courthouse near the Clerk's office window. *Id.* ¶¶ 12-13. While Plaintiff was waiting for his attorney, Defendant Blesser, who is a police officer for the City of Albany, told two unknown individuals to leave the lobby. *Id.* ¶ 14. Subsequently, Defendant Blesser shouted at Plaintiff and asked him which courtroom he was supposed to be in. *Id.* ¶¶ 15-16. Plaintiff explained to Defendant Blesser that he was not there for a court appearance, but was waiting for his attorney who was in the Clerk's office. *Id.* ¶ 18. Plaintiff stepped away from the window of the Clerk's office so Defendant Blesser could tap on the window to get Plaintiff's attorney's attention. *Id.* ¶¶ 20-21. However, when Plaintiff stepped away from the window, Defendant Blesser grabbed Plaintiff by the collar and twisted his arm behind his back, shoving Plaintiff towards the door. *Id.* ¶ 23. At this point, an unknown officer, "John Doe1" approached Defendant Blesser and Plaintiff and provided "encouragement and assistance to Defendant Blesser." *Id.* ¶ 27. John Doe2 observed Defendant Blesser and John Doe1's actions. *Id.* ¶ 30.

---

[1] The municipal defendants filed their motion to dismiss on September 19, 2013. *See* Dkt. No. 6. Thereafter, Defendant Blesser was served with a copy of the summons and complaint, and sought to join the municipal defendants' motion to dismiss. *See* Dkt. No. 22. Plaintiff does not object to Defendant Blesser's joinder. *See* Dkt. No. 24.

[2] These allegations are presumed to be true only for the purposes of the motions to dismiss, and do not constitute findings of fact by the Court.

Plaintiff was physically removed from the building and threatened with arrest if he reentered. *Id.*

¶ 28. As a result, "Plaintiff has suffered permanent physical injury." *Id.* ¶ 29. Plaintiff also

alleges that he was seized pursuant to official policies or customs of the municipal defendants.

*See id.* ¶¶ 38-43.

## III. DISCUSSION

### A.    Legal Standard

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings

without considering the substantive merits of the case. *See Global Network Commc'ns v. City of*

*New York*, 458 F.3d 150, 155 (2d Cir. 2006); *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir.

2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in

the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc.*

*v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth,

however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citation omitted). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is

limited to consideration of the complaint itself" unless all parties are given a reasonable

opportunity to submit extrinsic evidence. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). In

ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine

itself to the four corners of the complaint and look only to the allegations contained therein.

*Robinson v. Town of Kent*, No. 11 Civ. 2875, 2012 WL 3024766, at *3-4 (S.D.N.Y. July 24,

2012) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient facts "to sho[w] that the pleader is entitled to

relief[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555, and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

**B.      Analysis**

**1.      Municipal Liability Pursuant to 42 U.S.C. § 1983 (*Monell* Claim)**

As an initial matter, it is clear that the City of Albany Police Department is not a proper defendant in this action. It is well established that a police department "is an administrative arm of the City, which is a municipality, [and therefore] the Police Department 'cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.'" *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (quoting *Leland v. Moran*, 100 F. Supp. 2d 140, 145 (N.D.N.Y. 2000)); *see also Lluberes v. City of Troy*, No. 11-CV-1346, 2014 WL 1123413, *8 (N.D.N.Y. Mar. 21, 2014) (finding claims against the City of Troy and the Troy Police Department to be redundant and dismissing claims against the latter). As such, Plaintiff's claims against the City of Albany Police Department are dismissed.

Plaintiff also asserts claims against Defendant Blesser in both his individual and official capacities. Official capacity claims against municipal officials are treated as raised against the municipality itself. *See e.g.*, *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) ("a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents"); *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) ("a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself"); *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("the claim against defendants . . . in their official capacity is essentially a claim against the village"); *see also Lluberes*, 2014 WL 1123413, at *8 (dismissing claims against individual defendants in their official capacities). As such, Plaintiff's claims against Defendant Blesser in his official capacity are dismissed.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). Thus, a civil rights action brought under Section 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law. *Id.*

A municipality cannot be held liable under Section 1983 for the acts of its employees below the policy-making level solely on a theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). A Section 1983 claim can only be brought against a municipality if the action

that is alleged to be unconstitutional was the result of an official policy or custom. *Id.* at 690-91.

Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury.

*Bd. of Cnty. Commis of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Connick v.*

*Thompson*, —— U.S. ——, 131 S.Ct. 1350, 1359 (2011) ("A municipality or other local

government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a

deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*,

436 U.S. at 692).

The Second Circuit has established a two prong test for Section 1983 claims brought

against a municipality. First, the plaintiff must prove "'the existence of a municipal policy or

custom in order to show that the municipality took some action that caused his injuries beyond

merely employing the misbehaving [official].'" *Johnson v. City of New York*, No. 06 CV 09426,

2011 WL 666161, *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d

40, 44 (2d Cir. 1985)). Second, the plaintiff must establish a causal connection between the

policy or custom and the alleged deprivation of his constitutional rights. *Id.* To satisfy the first

prong of the test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality;
> (2) actions taken or decisions made by government officials
> responsible for establishing municipal policies which caused the
> alleged violation of the plaintiff's civil rights; (3) a practice so
> persistent and widespread that it constitutes a custom or usage and
> implies the constructive knowledge of policy-making officials, or
> (4) a failure by official policy-makers to properly train or supervise
> subordinates to such an extent that it amounts to deliberate
> indifference to the rights of those with whom municipal employees
> will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation

marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y.

2010) (quoting *Moray* and updating citations to cases). Plaintiff apparently relies on several of

these alternative bases to establish his *Monell* Claim. Plaintiff alleges that:

> The seizure of plaintiff was undertaken in accordance with official policies or customs of defendants, City of Albany, New York, and Albany Police Department by agents thereof acting under color of state law.
>
> Upon information and belief, said policies or customs include, but are not limited to: a policy of deliberate indifference to acts of misconduct, such as arrests or seizures of citizens without probable cause by police officers; permitting, ratifying or tacitly encouraging the seizure or arrest of citizens by police officers absent probable cause; arrest or seizure of citizens without probable cause; a failure to train police officers to investigate or ascertain that probable cause to arrest exists before an individual is seized; and seizing and otherwise discriminating against Black individuals on less than probable cause.
>
> Upon information and belief, defendants City of Albany or Albany Police Department had actual or constructive knowledge of defendant Blesser's propensity to violate the constitutional or statutory rights of individuals and took no steps to prevent the recurrence.
>
> Upon information and belief, there has been neither civil nor criminal investigation nor prosecution undertaken by any member, agent, servant or employee of defendant Albany Police Department or City of Albany with respect to any of the acts of defendants described above.
>
> Upon information and belief, the refusal to correct the violation of plaintiff's constitutional rights and/or the ratification thereof was undertaken pursuant to an agreement between defendants to protect one another from civil or criminal liability for the commission of illegal acts.
>
> The above-described agreement by and between defendants to protect one another from civil liability or criminal prosecution for the commission of illegal acts was entered into pursuant to an official policy or custom of the City of Albany and/or the Albany Police Department or their agents, servants or employees.

Dkt. No. 1 ¶¶ 38-43.

As discussed further below, these allegations, which are either legal conclusions or are made upon information and belief, are not supported by factual information that makes "the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *see also Inesti v. Hicks*, No. 11 Civ. 2596, 2012 WL 2362626, *17 n.30 (S.D.N.Y. June 22, 2012) (granting motion to dismiss where the plaintiff's complaint "allege[d] no facts demonstrating a policy or custom of the City of New York, nor can such a policy or custom that is associated with the alleged violations of his federally protected rights be inferred"), *report and recommendation adopted by* 2012 WL 3822224 (S.D.N.Y. Sept. 4, 2012); *Nieves v. Cnty. of Monroe*, 761 F. Supp. 2d 48, 54 (W.D.N.Y. 2011) (concluding that the "plaintiff ha[d] not plausibly alleged that the County engaged in any custom, pattern or policy in violation of his constitutional rights"); *Bradley v. City of New York*, No. 08-CV-1106, 2009 WL 1703237, *3, (E.D.N.Y. June 18, 2009) (collecting cases and observing that "[i]n terms of what a complaint must allege to survive a Motion to Dismiss, the Second Circuit has held that the mere assertion . . . that a municipality has [an unconstitutional] custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference") (internal quotations omitted). Without offering factual support for his allegations, this Court cannot "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

The Complaint lacks sufficient allegations to show the existence of a formally recognized policy or rule adopted by the City of Albany. Despite Plaintiff's repeated suggestion that the City of Albany maintains various policies that led to his constitutional deprivations, he does not substantiate these allegations with facts about his or others' experiences that, if accepted as true, would indicate the existence of a formal policy. *See Johnson*, 2011 WL 666161, at *3.

"[B]oilerplate recitation of the elements of a *Monell* claim is insufficient to survive a motion to dismiss." *In re Dayton*, 786 F. Supp. 2d 809, 823 (S.D.N.Y. 2011) (dismissing *Monell* claims where complaint made conclusory allegations, "on information and belief, that the municipal defendant 'negligently failed to properly administer its agencies[,] departments [,] personnel[,] and the like in regard to the maintenance, design, supervision and control over those accused and detained'"). The Court cannot permit a plaintiff to proceed beyond a motion to dismiss and be afforded discovery when "armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Plaintiff's complaint does not satisfy any other possible bases of *Monell* liability. Plaintiff fails to allege that any of the officers have policymaking authority. Only municipal officials who have "final policymaking authority" with respect to the activities that allegedly violated a plaintiff's constitutional rights "may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *see also Birmingham v. Ogden*, 70 F. Supp. 2d 353, 374 (S.D.N.Y. 1999) (finding that "the decisionmaker must be responsible for establishing final government policy respecting the particular activity [giving rise to a plaintiff's claims] before the municipality can be liable") (citing *Pembaur v. City of Cincinnati*, 475 U.S. 479, 481 (1986)). Plaintiff does not allege that any of the officers are final policymakers for the City of Albany nor does the complaint contain any factual allegations from which such authority could be inferred. Plaintiff also fails to sufficiently allege facts that demonstrate a consistent and widespread practice by the City of Albany. "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Finally, Plaintiff does not allege with factual specificity any failure to train or supervise, or deliberate indifference to the

constitutional rights of citizens that a plaintiff must show before a municipality will be held liable on the basis of such a failure. *See Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). Therefore, Plaintiff has failed to satisfy the first prong of the municipal liability test and his Section 1983 *Monell* claim against the City of Albany must be dismissed.

### 2. Individual Liability of Defendant Blesser

### a. Fourth Amendment Claim

The Fourth Amendment, as applied to the states by the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Not every interaction between citizens and the police constitutes a seizure under the Fourth Amendment. "A Fourth Amendment seizure occurs where a police officer briefly detains an individual and restrains that person's right to walk away." *Palmieri v. Town of Babylon*, No. 06-CV0968, 2008 WL 3155153, *12 (E.D.N.Y. Aug. 4, 2008) (citing *United States v. Moreno*, 897 F.2d 26, 30 (2d Cir. 1990)). More specifically, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Cal. v. Hodari P.*, 499 U.S. 621, 624 (1991) (refining the *Mendenhall* rule to require "either physical force [or] . . . submission to the assertion of authority"). In making the determination of whether a reasonable person would have believed that he was not free to leave, courts may look at "the threatening presence of several officers; the display of a weapon; the physical touching of the person by the officer; [and] language or tone indicating that compliance with the officer was compulsory." *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992).

In his complaint, Plaintiff alleges that Defendant Blesser approached him near the Clerk's office in the courthouse, grabbed him by the collar and twisted his arm behind his back, before escorting him out of the building. *See* Dkt. No. 1 ¶¶ 23, 28. Construing the complaint in the light most favorable to Plaintiff, it appears that in escorting Plaintiff from the courthouse, Defendant Blesser was merely attempting to get Plaintiff to leave the courthouse and that his contact with him was solely to effectuate this purpose. Once Plaintiff was escorted outside of the courthouse, he was released and was not prevented from going anywhere he wanted, except back into the courthouse. Plaintiff does not allege that any of his personal belongings were confiscated, which might have prevented him from leaving, thus indicating that Defendant Blesser's conduct might have constituted a seizure. *See, e.g.*, *United States v. Lee*, 916 F.2d 814, 819 (2d Cir. 1990) ("prolonged retention of a person's personal effects" may suggest a seizure) (citations omitted). As such, Defendant Blesser's actions in escorting Plaintiff outside of the courthouse did not constitute a seizure under the Fourth Amendment.

The facts of this case are very similar to those in *Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994), cert. denied, 513 U.S. 816 (1994) and *Posr v. Killackey*, No. 01Civ.2320, 2003 WL 22962191, *7 (S.D.N.Y. Dec. 17, 2003). In *Sheppard*, a fired law clerk argued that he had been seized for purposes of the Fourth Amendment when court officers removed him from the judge's chambers and escorted him out of the courthouse. 18 F.3d at 150, 153. The Second Circuit rejected this claim, and held that no seizure had occurred because the clerk was "free to go anywhere else that he desired, with the exception of [the judge's] chambers and the court house." *Id.* at 153 (internal quotation marks omitted); *see also Maxwell v. City of New York*, 102 F.3d 664, 668 n.2 (2d Cir. 1996) (relying on *Sheppard* and holding that refusing entrance does not constitute a seizure). In *Posr*, a videographer attempted to enter a courthouse for the purpose of

taping a family court proceeding. After being told that cameras were not allowed in the courtroom, he was escorted from the courthouse, released, and prohibited from reentering. Relying on *Sheppard*, the court concluded that no seizure had occurred. *Posr*, 2003 WL 22962191, at *7; *see also Robinson v. Town of Colonie*, 878 F. Supp. 387, 396-402 (N.D.N.Y. 1995) (relying on *Sheppard* and concluding that the plaintiffs were not seized after being escorted from retail store because "[l]ike Mr. Sheppard, the Robinsons were always free to go anywhere they wanted as long as they did not remain in the store").

Since there was no seizure, it is unnecessary for the Court to address whether the requisite probable cause existed to make the seizure lawful. Similarly, to the extent Plaintiff seeks to interpose an excessive force claim, that claim fails because he was not seized. "There can be no claim that a law enforcement officer has used excessive force in the absence of an actual 'arrest, investigatory stop, or other 'seizure' of a free citizen' under the Fourth Amendment." *Ameduri v. Village of Frankfort*, --- F. Supp. 2d ----, No. 6:11-CV-50, 2014 WL 1311929, *17-18 (N.D.N.Y. Mar. 31, 2014) (quoting *Graham v. O'Connor*, 490 U.S. 386, 394 (1989)). Accordingly, Defendants motion to dismiss Count One of the complaint is granted.

### b. First Amendment Claim

Plaintiff claims that his First Amendment right to peaceably assemble was violated when he was expelled from the courthouse. In order to prevail on a First Amendment claim under 42 U.S.C. § 1983, "a plaintiff must demonstrate that his conduct is deserving of First Amendment protection and that the defendants' conduct of harassment was motivated by or substantially caused by his exercise of free speech." *Washpon v. Parr*, 561 F. Supp. 2d 394, 409 (S.D.N.Y. 2008) (quoting *Rattner v. Netburn*, 980 F.2d 204, 208 (2d Cir. 1991)). The First Amendment provides that the government "shall make no law . . . abridging . . . the right of the people peaceably to

assemble . . . . " U.S. Const. amend. I.  This protection embraces two types of associational rights: (1) intimate human relationships, and (2) association for purposes of engaging in protected speech. *Roberts v. United States Jaycees*, 468 U.S. 609, 617-618 (1984).  Here, Plaintiff's claim can only be construed as arising from an alleged infringement of the latter associational right.

Plaintiff's complaint contains no allegations supporting such a claim.  Plaintiff has not alleged that he was engaged in any protected activity under the First Amendment when he was escorted from the courthouse.  He claims only that he was in the public area of the courthouse, waiting for his attorney.  *See* Dkt. No. 1 ¶ 13.  "It takes more to make a First Amendment claim than merely being arrested on space that may be a public forum."  *Tsitsoulis v. Twp. of Denville*, No. 07-4544, 2009 WL 5205276, *8-9 (D.N.J. Dec. 23, 2009) (dismissing First Amendment freedom of assembly claim where First Amendment claim appeared "entirely coextensive with the [plaintiff's] Fourth Amendment Claim" and observing that historically, the right to petition the government for a redress of grievances is the primary right guaranteed by the First Amendment, and the right to peaceably assemble is a "subordinate and instrumental right"); *see also United States v. Cruikshank*, 92 U.S. 542, 552, 23 L.Ed. 588 (1875) ("The right of the people peaceably to assemble *for the purpose* of petitioning Congress for a redress of grievances, or for any thing else connected with the powers or the duties of the national government, is . . . guaranteed by[ ] the United States.") (emphasis added).  The complaint does not suggest that Plaintiff's presence at the courthouse "involved any expressive activity protected by the First Amendment."  *Tsitsoulis*, 2009 WL 5205276, at *10.  Accordingly, the Court finds that Plaintiff fails to state a claim under the First Amendment.

Although not pled in the complaint, Plaintiff attempts to raise a First Amendment denial of access claim in his opposition papers.  "It is well established that plaintiffs cannot amend their

complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss, and therefore [a] [c]ourt shall not consider the assertions raised for the first time in plaintiff's memorandum." *Thomas v. City of New York*, No. 12-CV-5061, 2013 WL 3810217, *3 (E.D.N.Y. July 23, 2013) (citations and quotations omitted). The Second Circuit has held that "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint." *Shah v. Helen Hayes Hosp.*, 252 Fed. Appx. 364, 366 (2d Cir. 2007) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). As such, the Court need not consider this claim. Even were the Court to consider a putative right of access claim, it is without merit.

Right of access to the courts is rooted in the First Amendment, which protects access for the public and the press. *See Richmond Newspapers v. Virginia*, 448 U.S. 555, 573 (1980) ("the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and of the press could be eviscerated."); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004). "For many centuries, both civil and criminal trials have traditionally been open to the public." *Gannett Co. v. DePasquale*, 443 U.S. 368, 368 n.15 (1979). This right extends to cases where an individual is barred from viewing a court proceeding, as well as cases where the public or the press may be excluded from a proceeding as a whole. *Huminski v. Corsones*, 386 F.3d 116, 146 n.31 (2d Cir. 2004). The right of access has also been held to extend to docket sheets, *see Hartford Courant*, 371 F.3d at 57, pretrial motions, *see United States v. Wolfson*, 55 F. 3d 58, 59 (2d Cir. 1995), and other judicial documents, *see Lugosch v. Pyramid Co. of Onondaga*, 425 F.3d 110, 121 (2d Cir. 2006) ("documents submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches, under both the common law and the First

Amendment").  It is axiomatic, however, that no claim can exist for denial of access to a judicial proceeding if no judicial proceeding is taking place.  *See generally Kelly v. Mun. Court of Marion County*, 852 F. Supp. 724, 735 (S.D. Ind. 1994) ("A courtroom is not a debate hall or a gathering place for the public to exchange ideas; it is a forum for adjudicating the rights and duties of litigants."); *see also Sheppard v. Beerman*, 18 F.3d 147, 152 (2d Cir. 1994) (affirming dismissal of First Amendment claim where, despite alleged restrictions on plaintiff, such as directing him to examine court files outside the courtroom and to stop going in and out of courtroom, there was no allegation that plaintiff was denied access to the proceeding if he kept proper decorum); *Cathedral Church of the Intercessor v. Inc. Vill. of Malverne*, 353 F. Supp. 2d 375, 388 (E.D.N.Y. 2005) (dismissing claim for interference with access to the courts where, among other things, there was no claim of actual injury resulting from defendants' actions).

In the present matter, any such right of access claim cannot survive a motion to dismiss because Plaintiff does not allege that he was prevented from observing any proceeding; rather, he was simply removed from the courthouse.  Plaintiff's complaint specifically alleges that he was not at the courthouse for a personal court appearance or to observe some other proceeding, but was there with his attorney for business at the clerk's office.  Similarly, Plaintiff also does not allege that, as a result of his removal from the courthouse, he was ultimately denied access to the documents he or his attorney were there to examine.  *See* Dkt. No. 11 at 6-7.  As such, Plaintiff has failed to allege any injury because he was not denied access to anything.  Accordingly, Defendants' motion to dismiss Count Two of the complaint against is granted.

### c.    Intentional infliction of emotional distress

In order to state a claim for intentional infliction of emotional distress under New York law, the Plaintiff must plead: "(1) extreme and outrageous conduct, measured by the reasonable

bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Margrabe v. Sexter & Warmflash*, P.C., 353 Fed. Appx. 547, 550 (2d Cir. 2009) (quoting *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)); *see also Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). New York law sets a very high threshold for extreme and outrageous conduct. "The conduct at issue 'must transcend the bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Margrabe*, 353 Fed. Appx. at 550 (quoting *Klinge v. Ithaca Coll.*, 235 A.D.2d 724, 727 (3d Dept. 1997)). To survive a motion to dismiss, "[t]he conduct alleged must be such that it can be fairly characterized as egregious, utterly despicable, heartless or flagrant." *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, No. 00CIV5433, 2001 WL 180055, *2 (S.D.N.Y. February 22, 2001). A claim for the intentional infliction of emotion distress is "rigorous, and difficult to satisfy." *Howell*, 81 N.Y.2d at 122 (citations omitted)

The complaint contains no allegations of conduct that rises to the level of being extreme or outrageous. Plaintiff complains that Defendant Blesser shouted at him in a hostile tone, grabbed Plaintiff by the collar and violently twisted his arm behind his back, and physically threw Plaintiff out the door. *See* Dkt. No. 1 ¶¶ 15, 23, 28. Assuming Plaintiff's allegations to be true, Defendant Blesser's conduct may have been excessive, inappropriate, and disproportionate, but it does not rise to the level of "despicable, heartless, or flagrant" or by any means "utterly intolerable." Nor does the complaint allege that Defendant Blesser acted with the intent to cause severe emotional distress, or indicate what severe emotional distress resulted from Defendant Blesser's actions. Therefore, Plaintiff has not adequately pled an intentional infliction of emotional distress claim, and the motion to dismiss Count Three of the complaint is granted.

### d.    Fourteenth Amendment Equal Protection Claim

Finally, Plaintiff claims that he was subject to the treatment alleged in the complaint because he is a black male, thereby depriving him of equal protection under the law.  "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  A plaintiff may proceed under the Equal Protection Clause as either a "class of one," *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*) (citations omitted), or under the theory of "selective enforcement," *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted).   Under either a selective enforcement or "class of one" equal protection claim, a plaintiff must show treatment different from other similarly situated individuals.  *See Nemeth v. Vill. of Hancock*, No. 3:10-CV-1161, 2011 WL 56063, *5 (N.D.N.Y. Jan. 7, 2011)

A successful selective enforcement equal protection claim requires pleading and proof: (1) that the plaintiff "was treated differently from other similarly situated individuals"; and (2) that "such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff]." *U.S. v. Stewart*, 590 F.3d 93, 121 (2d Cir. 2009), cert. denied by *Sattar v. U.S.*, 559 U.S. 1031 (2010) (quoting *Harlen Assocs.*, 273 F.3d at 499); *see also Bizarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  In particular, a "plaintiff must present evidence comparing [him]self to individuals that are 'similarly situated in all material respects.'" *Sebold v. City of Middletown*, No. 3:05-CV-1205, 2007 WL 2782527, *26 (D. Conn. Sept. 21, 2007) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

The Supreme Court has affirmed the validity of "class of one" claims "where the plaintiff alleges that she has been [1] intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564. "[A]n *Olech*-type equal protection claim focuses on whether the official's conduct was rationally related to the accomplishment of the work of their agency." *Bizarro*, 394 F.3d at 88-89. "Stated differently, a plaintiff asserting a 'class of one' equal protection claim must allege that the intentional disparate treatment . . . was 'wholly arbitrary' or 'irrational.'" *Vaher*, 916 F. Supp. 2d at 433 (citations omitted). In order to survive a motion to dismiss, a plaintiff making a "class of one" claim must allege specific examples of differing treatment of others who are similarly situated. *See Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).[3] The plaintiff's burden on a "class of one" claim is "extremely high," and a plaintiff cannot prevail absent a *prima facie* showing that he is "identical in all relevant respects" to the individuals with whom he compares himself. *Id.* (citation omitted). Specifically, the plaintiff must establish that

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

---

[3] The Court notes that *Neilson* involved the application of the class of one equal protection theory in the public employment context. Subsequent to the decision in *Neilson*, however, the Supreme Court explicitly held that "the class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 595 (2008). Thus, the Second Circuit "overrule[d] [*Neilson*] . . . to the extent that it conflicts with the holding of *Engquist*." *Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008). Nevertheless, the Second Circuit's discussion in *Neilson* regarding the level of similarity necessary to support a class of one equal protection claim has not been overruled. *See Smith v. Fischer*, No. 9:07-CV-1264, 2009 WL 632890, *10 n.30 (N.D.N.Y. Feb. 02, 2009) (quotation and other citations omitted).

*Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quotation and footnote omitted).

The Court notes that "there is disagreement within the Second Circuit regarding the precise standard for determining whether comparators are similarly situated for [selective enforcement and class of one'] claims." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011); *see also Norwood v. Salvatore*, No. 3:12-cv-1025, 2014 WL 203306, *6-7 (N.D.N.Y. Jan. 17, 2014) (summarizing disagreement and analyzing cases). However, since Plaintiff has not made any allegations whatsoever regarding disparate treatment of comparators, the Court need not examine the issue.[4] Plaintiff makes only a conclusory and speculative allegation that "Defendants' extreme and outrageous conduct . . . was instituted and continued against Plaintiff because Plaintiff is a black male." Dkt. No. 1 at ¶ 52. Plaintiff does not allege any examples of other, similarly situated individuals who were treated differently. To the contrary, Plaintiff alleges that there were two other individuals in the lobby who were also

---

[4] Other courts have similarly acknowledged the disagreement without deciding which standard should apply. *See, e.g., Fortunatus v. Clinton Co.*, No. 8:12-CV-458, 2013 WL 1386641, *14 (N.D.N.Y. Apr. 4, 2013) (noting disagreement within the Second Circuit, observing that "this Court does not understand the subtle distinction between 'extreme high degree' and 'all material respects,'" and ultimately concluding that the plaintiff's proof failed under the lesser standard); *Laidlaw Energy and Envtl., Inc. v. Town of Ellicottville, New York*, No. 08-CV-32-S, 2011 WL 4954881, *10 n.4 (W.D.N.Y. Oct. 18, 2011) (acknowledging that "there is a dispute in this Circuit's district courts over whether the same standard applies to both selective enforcement and 'class of one' claims" while granting defendant's motion to dismiss "[b]ecause this Court finds that [plaintiff] is not similarly situated even under a more permissive selective enforcement standard, it need not consider whether [plaintiff] would fare better under the potentially more stringent 'class of one' standard"); *Gentile v. Nulty*, 769 F. Supp. 2d 573, 580 (S.D.N.Y. 2011) (noting that "courts are in some disagreement as to the meaning of 'similarly situated' in the selective enforcement context," but declining to decide which standard to apply on summary judgment because, under any standard, the plaintiff had not shown that there was a question of fact as to whether he was similarly situated to any comparators); *Wood v. Town of East Hampton*, No. 08-CV-4197, 2010 WL 3924847,*20 (E.D.N.Y. Sept. 30, 2010) (explaining that the court "need not resolve this disagreement because, under any of the standards articulated," the plaintiff had failed to allege that he was similarly situated to the proffered comparator).

instructed by Defendant Blesser to leave the area. *See id.* ¶ 14. Plaintiff allegations are plainly insufficient to state a equal protection claim. The Court also notes that Plaintiff has not opposed this aspect of Defendants' motion to dismiss, thus "apparently conced[ing] that the claim fails." *Wasserman v. Maimonides Med. Ctr.*, 970 F. Supp. 183, 192 (E.D.N.Y. 1997); see also Dkt. No. 11 at 3 ("Plaintiff acknowledges . . . the burdens attendant to pleading an equal protection claim, and hereby withdraws that branch of the action."). Accordingly, Defendants' motion to dismiss Count Four of the complaint is granted.

### 3.     Leave to Amend

It has long been "well-established that 'outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.'" *Harrison v. Enventure Capital Group, Inc.*, 666 F. Supp. 473, 479 (W.D.N.Y. 1987) (quoting *Nagler v. Admiral Corporation*, 248 F.2d 319, 322 (2d Cir. 1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead." *Stern v. General Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991). Leave to amend a pleading need not be granted, however, if it would be futile to do so. *See O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002) (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995)).

In the present matter, Plaintiff's claims against the City of Albany Police Department and Defendant Blesser in his official capacity fail as a matter of law. As such, those claims are dismissed with prejudice. The Court cannot say at this point, without the benefit of further briefing, that leave to amend Plaintiff's remaining claims would be futile. Accordingly, dismissal of Plaintiff's claims against the City of Albany and Defendant Blesser in his individual capacity shall be without prejudice.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. Nos. 6, 22) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's claims against the City of Albany Police Department and Defendant Blesser in his official capacity are **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff's claims against the City of Albany and Defendant Blesser in his individual capacity are **DISMISSED without prejudice**; and the Court further

**ORDERS** that to the extent Plaintiff wishes to file an amended complaint, Plaintiff shall file a motion to amend within fourteen (14) days of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that, if Plaintiff does not timely file a motion to amend, the Clerk of the Court is instructed, without further order of the Court, to enter judgment for Defendants and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  May 12, 2014
      Albany, New York

**Mae A. D'Agostino**
**U.S. District Judge**